**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **LATOSHA RANDLE**, individually, and on behalf of others similarly situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>**EMPYREAN BENEFIT SOLUTIONS, INC.**, a corporation,<br><br>                Defendant. | Case No.:  4:22-cv-02116<br><br>Hon.:<br><br>Mag.: |

**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, LATOSHA RANDLE ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Defendant, EMPYREAN BENEFIT SOLUTIONS, INC. ("Defendant"), and states as follows:

**INTRODUCTION**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and common law.

2.     According to its website, Defendant is "a top-tier human resource technology and services company supporting various organizations' needs to deliver compliant health & welfare benefits across a broad range of employees."[1]  "[Defendant's] platforms and services bring [employee] benefits to life, enabling [them] to not only better understand the value of the benefit programs offered to them, but to then connect with these benefits in a way that drives better

---

[1] *See*, https://www.goempyrean.com/ (last visited June 22, 2022).

outcomes from themselves, their families, and [Defendant's customers'] business[es]."[2]

3.      In order to provide the aforementioned service, Defendant employs customer service representatives in brick-and-mortar call centers located in Houston, Texas; Minneapolis, Minnesota; and Nashville, Tennessee, and in remote, at-home[3] call center settings across the United States.[4]  Defendant uses a number of titles, including, but not limited to, Client Service Representative, to refer to its customer service representatives (collectively referred to herein as "CSRs"). Defendant heavily relies on CSRs to "deliver a scalable and tailored benefits experience for all employees and their families."[5]

4.      Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing customer service over-the-phone and via chat to individuals enrolled in Defendant's benefit plans.

5.      Defendant employed Plaintiff as an hourly call center employee with the job title of CSR.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[6]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

---

[2] *See*, https://www.goempyrean.com/company/about-us/ (last visited June 22, 2022).
[3] Upon information and belief, Defendant's brick and mortar CSRs were sent to work from home during the pandemic.
[4] *See*, https://www.goempyrean.com/company/about-us/ (last visited June 22, 2022).
[5] *See*, https://www.goempyrean.com/company/about-us/ (last visited June 22, 2022).
[6] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf* (last visited June 22, 2022).

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

9.      Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, and in non-overtime workweeks, for regular hours.

10.      More specifically, Defendant failed to compensate CSRs for the substantial time they spent booting up their computer systems and reviewing emails with work instructions, prior to clocking in to Defendant's Five9 timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each day.

11.      Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.      At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.     Defendant' annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

17.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Texas, employs individuals within the state of Texas, and maintains its principal place of business in the state of Texas.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs hourly employees in this district, conducts business in this district, and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this district.

## PARTIES

19.     Plaintiff Latosha Randle is a resident of Webster, Texas and worked remotely for Defendant as an hourly, non-exempt CSR from approximately September 2021 through January 2022. Defendant compensated Plaintiff through the payment of an hourly rate, most recently

$18.00 per hour. Plaintiff Randle signed a consent to join this collective action, which is attached as **Exhibit A**.

20.    Defendant Empyrean Benefit Solutions, Inc. is a Delaware corporation (File No. 3989348) headquartered in Houston, Texas and with a registered agent for service of process listed as Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

## GENERAL ALLEGATIONS

21.    Defendant paid its CSRs at varying hourly rates.

22.    Defendant's CSRs were mostly employed on a full-time basis (meaning more than thirty (30) hours per week) and on some weeks worked over forty (40) hours in a single week, but in other weeks worked less than forty (40) hours. Prior to being hired, CSRs received an offer from Defendant that set forth the requirements of a CSR, the job duties, and the offered rate of pay.

23.    Plaintiff received such an offer from Defendant to serve as a CSR, and she accepted Defendant's offer with the understanding that her base wage rate, most recently $18.00 per hour, would be paid as promised.

24.    Plaintiff performed under the contract by carrying out her job duties and responsibilities. More specifically, Plaintiff utilized her knowledge of plans, products, systems, and procedures to enroll individuals in benefit plans and to resolve issues and answer health and welfare benefits questions from customers of Defendant's clientele. The aforementioned customer service was provided via inbound, and sometimes outbound, calls and chat, and Plaintiff would utilize systems to track all events and outcomes of her customer service interactions. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

25.    Once hired, Defendant provided all CSRs, like Plaintiff, with training on how to carry out their day-to-day job duties, including how to load and log into their computer programs

at the beginning of the day, and how to log out at the end of the day. The training Defendant's CSRs received was substantially, if not entirely, the same and all CSRs were subject to the same and/or substantially similar policies.

26.    Plaintiff and other similarly situated CSRs were instructed to be call or chat ready the moment their scheduled shift started, yet Defendant prohibited them from clocking in more than five (5) minutes before the start of their shift. This required Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift, so they could be prepared to take calls the moment their shift began. Additionally, Defendant's schedule adherence metrics tracked the amount of time a CSR was clocked in, but unavailable to take calls. The time spent clocked in while unavailable to take calls counted against the CSRs' schedule adherence.  Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, CSRs based on schedule adherence metrics that tracked how closely the CSR followed his/her schedule and the amount of time CSRs were clocked in while unavailable for calls.

27.    The boot-up and login process took longer than five (5) minutes to perform; thus, Defendant forced its CSRs to perform some, if not all, of the boot-up and login process *before* clocking into Defendant's timekeeping system, Five9.

28.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

29.     In order to perform their job duties, Plaintiff and Defendant's CSRs required a computer and a variety of essential and indispensable computer programs, applications, and servers.

30.    All of Defendant's CSRs used the same or similar computer networks, software

programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the CSRs' work and they could not perform their jobs without them.

31.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre- and post-shift work off-the-clock.

32.    Plaintiff and other similarly situated CSRs were required to start-up and log into these various computer programs, applications, and servers off-the-clock (before clocking into Defendant's timekeeping system) to avoid running afoul of Defendant's schedule adherence metrics and so they had access to information necessary to field customer queries the moment their scheduled shift started. Further, during this time, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

33.    Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

34.    As a result of the pre- and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately six (6) to fourteen (14) minutes of compensation every day.

35.    The pre- and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into and shutting down their computers and applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

36.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and post-shift activities; however, Defendant failed

7

to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with their CSRs.

37.    Further, Defendant was aware that by relying exclusively on a web-based timekeeping system that some off the clock work was bound to occur every day.

38.    Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

39.    Despite knowing Plaintiff and all other CSRs performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

40.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

41.    Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other CSRs experienced technical issues.

42.    Because Defendant required its CSRs, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

A.  **Pre-Shift Off-the-Clock Work**

43.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to start up and log into various software programs/applications in order to access information. Defendant instructed CSRs to have all work applications and systems fully

loaded before they clocked-in so that they were prepared to field customer queries the moment they clocked-in and the moment their scheduled shift began.

44.    Defendant also tracked the amount of time CSRs spent on the clock and unavailable to take calls. If CSRs spent too much time on the clock and unavailable (not ready) for calls, then they were subject to discipline.

45.    More specifically, before the start of each scheduled shift and before clocking in, Plaintiff had to perform the following steps:

a.  Turn on her computer and wait for it to turn on;

b.  Log into Microsoft Windows using a username and password;

c.  Secure access to Defendant's server (the virtual private network or "VPN") using a multifactor authentication process via DUO. This process required Plaintiff to enter her username and password on her computer and then push "Approve" on the notification that appeared on her cell phone;

d.  Log into Defendant's Five9 timekeeping system;

e.  Open Google Chrome and the various programs she had listed as "Favorites" that she would need to use to perform her job duties (for example, Defendant's CRM – customer relationship management software – to access client information);

f.  Open Microsoft Outlook – the application through which she communicated with Workforce Management and her managers;

g.  Open Skype – the application she utilized to communicate with her co-workers; and

h.  Clock into Five9.

46.    The above-described start-up/log-in process took substantial time on a daily basis with said time ranging from five (5) to fifteen (15) minutes per day, and even longer on days when Defendant's computer network and/or programs were not working properly.

47.    Plaintiff and Defendant's CSRs completed this process before each shift and before they clocked into Defendant's timekeeping system and began fielding customer queries.

9

48.     The unpaid off-the-clock work performed prior to each shift by Plaintiff and other CSRs was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

**B.  <u>Post-Shift Off-the Clock Work</u>**

49.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to clock-out as soon as they were done fielding their last customer query for the day and *before* closing all work applications and systems to make certain they were clocked-out the moment they stop fielding customer queries.

50.      After they clocked out for the day, CSRs, including Plaintiff, were forced to shut-down/log-out of the various computer programs and software applications they utilized in performing their job duties.  This resulted Plaintiff and other CSRs performing an additional one (1) to two (2) minutes of off-the-clock work every day.

51.     The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

**C.  <u>Technical Down Time</u>**

52.     Additionally, in the course of performing their jobs, Plaintiff and other CSRs regularly experienced technical problems with their computer systems *before* they clocked into Defendant's timekeeping system. For example, Plaintiff encountered technical issues with Defendant's VPN, which would require her to contact Defendant's technical support team and log into another VPN. Other times, Plaintiff experienced problems with Defendant's Five9 software, requiring her to contact Workforce Management.

53.    In these situations, the CSRs could spend an additional five (5) to ten (10) minutes or longer working with Defendant's technical team to resolve the problem(s).

54.    Defendant was aware of the time CSRs spent experiencing technical difficulties and working with Defendant's technical team to resolve these difficulties, and Defendant could pay CSRs for this time, but did not.

### D. Plaintiff's Exemplary Workweeks

55.    Defendant paid CSRs on a semi-monthly basis. As an example of two pay periods where Defendant failed to pay Plaintiff overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystubs for the pay periods of October 18, 2021 – October 31, 2021, and November 1, 2021 – November 21, 2021:

**October 18, 2021 – October 31, 2021 and**
**November 1, 2021 – November 21, 2021, Pay Periods**

- Plaintiff worked more than 40 hours in a week at a rate of $18.00 per hour and upon information and belief was paid $27.00 per hour in overtime.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 6 to 14 minutes or more at her overtime rate of $27.00 for each hour worked in excess of 40 in the overtime weeks.

**Exhibit B**, Randle October 2021 Exemplary Pay Statement; **Exhibit C**, Randle November 2021 Exemplary Pay Statement.

### COLLECTIVE ACTION ALLEGATIONS

56.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the three years preceding the date of an order from this Court granting conditional certification up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this

definition if necessary.

57.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

58.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

59.    Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

60.    All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

61.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

> a.  Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and
>
> b.  Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

62.    Defendant is aware, or should have been aware, that federal law requires it to pay Plaintiff and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

63.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

64.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

65.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre- and post-shift off-the-clock work owed to each employee – does not vary substantially among the proposed FLSA Collective members.

66.     Upon information and belief, there are many similarly situated current and former CSRs who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

67.     Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes thousands of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

68.     All of the estimations discussed herein will be refined after class discovery is completed.

69.     The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld

from them by Defendant.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

70.      Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf

of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant*
> *at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiff reserves the right to amend

this definition if necessary.

71.      The members of the Rule 23 Nationwide Class are so numerous that joinder of all

Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably

estimates there are thousands of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class

members should be easy to identify from Defendant's computer systems and electronic payroll

and personnel records.

72.      There is a well-defined community of interests among Rule 23 Nationwide Class

members and common questions of law and fact predominate in this action over any questions

affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual

questions, include, but are not limited to, the following:

      a.  Whether the pre-shift time Rule 23 Nationwide Class members spent on startup
           and login activities each shift is compensable time under applicable law;

      b.  Whether the post-shift time Rule 23 Nationwide Class members spent closing
           all programs, applications and networks is compensable time under applicable
           law;

      c.  Whether the technical down time Rule 23 Nationwide Class members spend
           troubleshooting is compensable;

      d.  Whether Defendant's non-payment of wages for all compensable time
           amounted to a breach of contract; and

      e.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

73.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

74.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of Nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

75.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

76.    This case will be manageable as a Rule 23 Class action.  Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

77.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

78.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

79.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

80.     At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

81.     At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

82.     At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

83.     Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

84.     Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

85.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

86.     At all times relevant to this action, Defendant required Plaintiff and all the proposed FLSA Collective members to perform pre- and post-shift work off the clock, every shift, and

Defendant failed to pay these employees the federally mandated overtime compensation for all work performed.

87.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

88.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable.  29 U.S.C. § 207.

89.    Defendant's violations of the FLSA have been knowing and willful. Defendant has known or could have determined how long it takes its CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for these work activities, but did not.

90.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

91.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

92.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour

they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

93. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

94. For example, Defendant offered to compensate Plaintiff at a minimum of $18.00 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as CSRs in reliance on the offer.

95. Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

96. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $18.00 per hour within the applicable period.

97. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

98. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and

each member of the Rule 23 Nationwide Class.

99.     Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

100.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

101.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

102.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

103.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

104.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

105.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

106.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

107.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

108.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

109.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

110.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

111.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

112.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

113.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.      An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.      An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c.      An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count III);

d.      An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.      An Order designating the Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.      An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.      An Order declaring Defendant's violations of the FLSA were willful;

h.      An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.      An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

j.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages;

and

m.    An Order awarding such other and further relief as this Court deems appropriate.

Dated: June 28, 2022                          Respectfully Submitted,

                                             */s/* Matthew John Prebeg
                                             Matthew John Prebeg (Attorney in Charge)
                                             Texas Bar No. 00791465
                                             S.D. Tex. Bar No. 603742
                                             Tom Bayko
                                             Texas Bar No. 01864500
                                             Christopher M. Faucett
                                             Texas Bar No. 00795198
                                             Stephen W. Abbott
                                             Texas Bar No. 00795933
                                             Brent T. Caldwell
                                             Texas Bar No. 24056971
                                             BAYKO, PREBEG, FAUCETT & ABBOTT, PLLC
                                             8441 Gulf Fwy. Ste. 307
                                             Houston, Texas 77017-5066
                                             832.742.9263
                                             mprebeg@bpfalawfirm.com
                                             tbayko@bpfalawfirm.com
                                             cfaucett@bpfalawfirm.com
                                             sabbott@bpfalawfirm.com
                                             bcaldwell@bpfalawfirm.com

                                             Kevin J. Stoops (*pro hac vice* forthcoming)
                                             Charles R. Ash, IV (*pro hac vice* forthcoming)
                                             Alana Karbal (*pro hac vice* forthcoming)
                                             SOMMERS SCHWARTZ, P.C.
                                             One Towne Square, 17th Floor
                                             Southfield, Michigan 48076
                                             Telephone: 248-355-0300
                                             kstoops@sommerspc.com
                                             crash@sommerspc.com
                                             akarbal@sommerspc.com

                                             *Counsel for Plaintiff*

## JURY DEMAND

Plaintiff, LATOSHA RANDLE, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: June 28, 2022                    Respectfully Submitted,

*/s/* Matthew John Prebeg
Matthew John Prebeg (Attorney in Charge)
Texas Bar No. 00791465
S.D. Tex. Bar No. 603742
Tom Bayko
Texas Bar No. 01864500
Christopher M. Faucett
Texas Bar No. 00795198
Stephen W. Abbott
Texas Bar No. 00795933
Brent T. Caldwell
Texas Bar No. 24056971
BAYKO, PREBEG, FAUCETT & ABBOTT, PLLC
8441 Gulf Fwy. Ste. 307
Houston, Texas 77017-5066
832.742.9263
mprebeg@bpfalawfirm.com
tbayko@bpfalawfirm.com
cfaucett@bpfalawfirm.com
sabbott@bpfalawfirm.com
bcaldwell@bpfalawfirm.com

Kevin J. Stoops (*pro hac vice* forthcoming)
Charles R. Ash, IV (*pro hac vice* forthcoming)
Alana Karbal (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
crash@sommerspc.com
akarbal@sommerspc.com

*Counsel for Plaintiff*